ASHER HOLZMAN and Others, Respondents, *v.* WEST END PAPER COMPANY, Appellant.

First Department, December 19, 1919.

Guaranty and suretyship — agreement to pay for goods sold to another with provision for reimbursement if goods sold are rejected — retention of possession by guarantor after rejection of goods by customer — waiver and estoppel — practice — failure of defendant entitled to dismissal to move therefor — new trial.

Where the plaintiffs, as bankers, undertook to finance the accounts of a person engaged in buying and selling paper and agreed with the defendant to remit to it monthly the net amount of all shipments made by the

defendant on approved shipping directions by the plaintiffs, with a proviso that the defendant should credit or make repayments to the plaintiffs for the amount of merchandise which customers might "refuse, reject or return," but the plaintiffs, knowing that a shipment of paper by the defendant had been refused by a customer who was unable to pay therefor and to whom they refused to give credit, retained the bill of lading and stored the goods through a railroad company and made payment to the defendant without in any way notifying it of the facts aforesaid, of which the defendant had no knowledge until after the goods were subsequently destroyed by fire, the plaintiffs, as a matter of law, will be deemed to have waived the right to recover the purchase price and will be deemed estopped from asserting that the goods had not been delivered to and accepted by the person whose account was guaranteed, or his customer.

Even if the retention of the evidence of title and the right to the possession of the goods without acceptance or rejection had not been for an unreasonable time when the goods were first stored, the continued possession without notice to the defendant until the fire occurred became unreasonable as a matter of law.

As the defendant made no motion for a direction of a verdict or a dismissal to which it would have been entitled, the court in setting aside a directed verdict for the plaintiff cannot dispose of the case finally, but must order a new trial.

CLARKE, P. J., dissents.

APPEAL by the defendant, West End Paper Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 11th day of February, 1919, upon the verdict of a jury rendered by direction of the court after a special verdict, had been received, and also from an order entered in said clerk's office on the 20th day of February, 1919, denying defendant's motion for a new trial made upon the minutes.

*George H. Cobb* of counsel [*Cobb & Cosgrove*, attorneys], for the appellant.

*Joseph A. Arnold*, for the respondents.

LAUGHLIN, J.:

On the 24th of December, 1904, plaintiffs entered into an agreement in writing with one J. S. Luneschloss, by which, as bankers, they undertook to finance his accounts for the purchase of paper. The defendant was engaged in manufacturing paper at Carthage, N. Y., and the plaintiffs on the

30th of January, 1909, wrote the defendant that they had made arrangements with Luneschloss to guarantee, upon the terms and conditions therein specified, such shipments as it might make and the plaintiffs might approve for the account of Luneschloss. On February 1, 1909, the defendant wrote the plaintiffs accepting their guaranty upon the terms proposed by them. By the terms of the plaintiff's guaranty they agreed to remit to the defendant, on the fifteenth of each month, the net amount of all shipments made by the defendant on approved shipping directions from the plaintiffs during the preceding month, but it was provided in the guaranty that should any of the customers of Luneschloss " refuse, reject or return the merchandise," the defendant should credit or repay to the plaintiffs the amount of said merchandise, or that the plaintiffs might deduct the amount from any succeeding settlement. On the 9th of December, 1916, the defendant shipped a carload of paper to Rochester, N. Y., to the order of Luneschloss on approved shipping instructions from the plaintiffs in accordance with the guaranty. On the sixteenth of January thereafter the plaintiffs remitted to the defendant, in accordance with the guaranty, the sum of $2,331.63, that being the amount of the purchase price of the said carload of paper. This action was brought to recover that amount, with interest, on the theory that the merchandise was refused or rejected by Luneschloss' customer at Rochester, or that the plaintiffs' guaranty never attached thereto for the reason that the merchandise was not accepted and found according to the contract by the customer of Luneschloss within the meaning of the guaranty providing that shipments made by the defendant for the account of Luneschloss and approved by the plaintiffs would not come under the guaranty until the goods were " delivered to the customers of Mr. J. S. Luneschloss and by them accepted and found according to contract." The defendant admitted the remittance of the money by the plaintiffs and interposed a counterclaim for $1,202.35 on account of other shipments made by the defendant to Luneschloss within the guaranty for which the defendant had not been paid. The counterclaim was admitted by the plaintiffs' failure to reply thereto and the amount the plaintiffs sought to recover was thereby reduced to $1,152.33. At the close

of the evidence the attorney for the plaintiffs moved for a direction of a verdict. The defendant made no motion for a direction or dismissal, but during the discussion of the plaintiffs' motion the attorneys for the defendant requested that all of the issues be submitted to the jury and particularly that it be left to the jury to find whether or not the plaintiffs by making the payment sought to be recovered back with full knowledge of the facts, to which reference will be made presently, waived their right to recover back the money so paid and as to whether or not the goods were accepted or rejected within the terms of the guaranty. The court decided to submit to the jury but the single question: " Were the goods covered by the order of November 28, Plaintiffs' Exhibit 7, delivered to Berman Bros., Inc., and accepted by them? " and refused to submit any other questions to the jury. The jury answered the question in the negative, and thereupon the court directed a verdict in favor of the plaintiffs, and the defendant moved for a new trial on all the grounds specified in section 999 of the Code of Civil Procedure. The motion was denied. The evidence shows that the bill of lading for the goods which were shipped to the order of Luneschloss with directions to notify him at his office address in New York city was forwarded by the defendant to Luneschloss, and that Luneschloss indorsed it, " Deliver to Berman Bros. Co., Inc., Rochester, N. Y., J. S. Luneschloss, per A. A. Nagle," and delivered it to the plaintiffs; that plaintiffs attached to the bill of lading a sight draft on Berman Bros., Inc., Luneschloss' customer at Rochester, for the purchase price of the goods according to the contract of purchase between Luneschloss and his customer and forwarded the same for collection to one of the Rochester banks; that shortly thereafter the plaintiffs called up Luneschloss' office and notified him that the draft was not accepted and asked what was to be done about it and were told that Luneschloss would have one of his employees see the Bermans about it; that thereafter, and on the 19th of December, 1916, one of the Bermans called on Luneschloss in New York city and stated that he was unable to take up the draft and asked for thirty days' credit; that Luneschloss referred him to the plaintiffs and sent one Abrams, a traveling salesman in the employ of Luneschloss, with him; that upon Berman stating

the facts to the plaintiffs they refused to give the credit sought, and it is to be inferred that Berman thereupon returned to Rochester, for on the twenty-second of December he wired Luneschloss to notify the carrier to put the car in the Buffalo, Rochester and Pittsburg warehouse, and that he, Berman, would " take care of it soon; " that Luneschloss thereupon, and on the same day, wrote the " railroad " company accordingly, but it does not appear to what railroad he wrote, otherwise than may be inferred from a letter he wrote the Bermans on that date in which he said, " In accordance with your telegram of this date, we have instructed the B. R. & P. Railroad Company at Rochester to store the carload of News shipped you under date of December 9th in their warehouse. Please, however, arrange to take this out as quickly as possible, and oblige; " that the carrier, the New York Central Railroad Company, evidently after having been notified tŏ store the goods, and on the twenty-eighth day of December, placed the goods in storage with the Whitney Warehouse and Elevator Company, at Rochester; that the warehouse company paid the freight and demurrage charges and on the twenty-ninth of December, by postal, notified Luneschloss that it had received the goods from the New York Central Railroad Company and that the same might be had by paying the warehouse charges and the back charges; that prior to the 10th of January, 1917, the plaintiffs made inquiries of Luneschloss with respect to the carload of paper, and on that day Luneschloss, in answer thereto, wrote the plaintiffs a letter which was lost and which was proved by parol to the effect that the car had been stored in the Whitney warehouse at Rochester, that he had considered the matter of insuring the car and inasmuch as he considered it to be the property of Berman Bros., Inc., he could not insure it without running the risk of its being claimed that he would be exercising ownership, but that he thought it could be insured by the plaintiffs, loss, if any, payable to them, but that it was for the plaintiffs to decide that question; that the goods remained in the warehouse until July 22, 1917, when they were destroyed by fire.

The defendant had no notice or knowledge, until after the fire, that the goods had not been delivered by Luneschloss

to some customer and by him accepted. The plaintiffs, with full knowledge that the goods had not been taken from the carrier by Luneschloss or by one of his customers, and that the customer for whom they were intended had refused to honor their sight draft attached to the bill of lading and that the goods had been placed in a warehouse subject to the order of Luneschloss and that the bill of lading had not been returned to the defendant, for it is to be inferred that it remained attached to the draft in the bank at Rochester or with the plaintiffs, on the 16th day of January, 1917, paid the defendant the purchase price of the paper according to the contract of guaranty and without notifying the defendant of any of these facts of which the plaintiffs had full knowledge.

I am of the opinion that as a matter of law on the uncontroverted evidence the plaintiffs were not entitled to recover and that the defendant would have been entitled to a direction of a verdict if it had so moved. There is no evidence that the goods were not of the kind and quality and according to the specifications required by the contract between the defendant and Luneschloss, or that there was any right to reject them on that ground. I am also of the opinion that under the circumstances the right to inspect the goods was waived and that the acts of Luneschloss and his customer in storing them without notifying the defendant that they had not been accepted constituted an acceptance and that any right of rejection or to refuse to accept them was thereby waived. The provision of the guaranty to the effect that the shipment should not be deemed as having been made under it until the delivery of the goods to the customer of Luneschloss and by them accepted and found in accordance with the contract would *ordinarily* protect the plaintiffs from liability to the defendant and entitle them to recover the money paid; but here the plaintiffs acquiesced in *an irregular and unusual arrangement* between Luneschloss and his customer and must have known that the defendant had no knowledge thereof and made the payment herein sought to be recovered back without notifying the defendant and holding and retaining the bill of lading which was evidence of title and right to possession of the goods. I am, therefore, of the opinion that by making the payment in the circumstances here dis-

closed the plaintiffs should be deemed to have waived the right to recover the money back and should be deemed estopped from claiming that the goods had not been delivered to and accepted by Luneschloss or his customer. To hold otherwise would be to permit the plaintiffs to retain the evidence of title and of the right to the possession of the goods, and to claim that the right to inspect the goods and reject them, and their right to recover back the money thus paid with full knowledge of the facts continued indefinitely. That I think would be an unreasonable construction of the contract of guaranty. Even if it might be said that the retention of the evidence of title and of the right to possession of the goods without acceptance or rejection had not been for an unreasonable length of time when the goods were first put in the warehouse or when the plaintiffs paid the defendant therefor — certainly the plaintiffs' continued retention of the evidence of title and right to possession without returning it to the defendant or notifying it that the goods had not been accepted or rejected until the fire was, as a matter of law, an unreasonable length of time and the right of election as to acceptance or rejection had then at least been lost. I am, therefore, of the opinion that the court erred in directing a verdict for the plaintiffs, but since the defendant did not move for a dismissal or a direction of a verdict we cannot dispose of the case finally but must grant a new trial.

It follows that the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

SMITH, MERRELL and PHILBIN, JJ., concur; CLARKE, P. J., dissents.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.